**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CAROLYN MCCOY,                          )   NO. CV 08-04217 SS
                                        )
                Plaintiff,              )
                                        )   **MEMORANDUM DECISION AND ORDER**
        v.                              )
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of the Social             )
Security Administration,               )
                                        )
                Defendant.              )
_____)

**INTRODUCTION**

Carolyn McCoy ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip.") filed on April 15, 2009. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

**A.    Initial Application**

On  March  20,  2002,  Plaintiff  filed  an  application  for  SSI. (Administrative Record ("AR") 73-75).   Plaintiff claimed disability resulting from blood clots, pulmonary embolism, swollen legs, shortness of  breath  and  chest  pains.    (AR  79).    Plaintiff  stated  that  the disability began on August 29, 1990.  (AR 73).

The Agency denied Plaintiff's application. (AR 47-50).  Plaintiff sought a hearing before an administrative law judge ("ALJ"). (AR 51). A hearing was held before ALJ Zane A. Lang on November 19, 2002.  (AR 21-45).   On February 19, 2003, the ALJ issued a decision denying benefits.  (AR 9-19).  Plaintiff requested review of the ALJ's decision before the Appeals Council.  (AR 7).  On June 5, 2003, the Appeals Council denied Plaintiff's request for review.  (AR 4-6).

Plaintiff filed a complaint in the Central District of California seeking review of the decision.   On December 8, 2003, the parties stipulated to a remand that required the ALJ to clarify his findings in regard to Plaintiff's residual functional capacity ("RFC").[1]  (AR 280-281).  The parties also stipulated that the ALJ must provide clear and convincing  reasons  if  the  new  decision  did  not  adopt  the  treating physician's opinion.  (AR 280-81).

_____

[1] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

**B.   Rehearings And Instant Complaint**

Accordingly, the ALJ held hearings on May 10, 2005 (AR 627-37), and on November 2, 2005.  (AR 580-604).  On February 14, 2006, the ALJ issued a decision denying benefits.  (AR 468-83).  Plaintiff requested review by the Appeals Council. (AR 494-95).  The Appeals Council vacated the ALJ's decision because he relied upon the testimony of a vocational expert ("VE") from the 2002 hearing in calculating Plaintiff's RFC.  (AR 504).  The Appeals Council remanded for a new hearing.  (AR 507-8).

On April 9, 2008, Plaintiff's hearing went forward before ALJ Alexander Weir III.  (AR 605-26).  ALJ Weir also found that Plaintiff was not entitled to benefits.  (AR 276-78).  On June 30, 2008, Plaintiff filed the present action.

**FACTUAL BACKGROUND**

**A.   Generally**

Plaintiff was born on February 2, 1960, and was forty-two years old when she filed for disability benefits.  (AR 220).  Plaintiff has a twelfth grade education,[2] but never graduated or received a GED.  (AR 619).  Plaintiff has never worked.  (AR 617).

---

[2]  There is an inconsistency in the record regarding Plaintiff's education.  At her first hearing and on her SSI application, Plaintiff stated she had an eighth grade education.  (AR 37-8, 85).  At the April 2008 hearing, though, Plaintiff testified that she attended school until twelfth grade, but did not graduate.  (AR 619).

3

**B.    Relevant Medical History**

**1. Treating Physician**

Plaintiff's treating physician at the time of the hearings was Elizabeth J. Covington, M.D.  (AR 174, 576).  In an undated Medical Provider Evaluation ("MPE") form, Dr. Covington diagnosed Plaintiff with deep vein thrombosis[3] ("DVT"), morbid obesity and thyroid dysfunction. (AR 390).  Dr. Covington assessed Plaintiff as temporarily disabled with a projected recovery date of July 16, 1999.  (Id.).  In a MPE form dated February 23, 2000, Dr. Covington diagnosed Plaintiff with morbid obesity and thyroid dysfunction.  (AR 247, 389).  Dr. Covington, in contrast to her earlier finding, now classified Plaintiff as permanently disabled. (AR 247, 389).  In a subsequent undated form, Dr. Covington diagnosed Plaintiff with chronic thrombophlebitis[4], osteoarthritis, morbid obesity and thyroid dysfunction.  (AR 230).  However, Dr. Covington, again changing her opinion, found that Plaintiff was temporarily disabled and listed April 15, 2002 as the projected recovery date.  (AR 230). Plaintiff underwent an echocardiogram on June 4, 2001.  (AR 186-87). The study revealed the left atrium to be at the upper limits of "normal," and found trace mitral regurgitation.  (AR 186-87).  The left

---

[3]  Deep vein thrombosis is a blood clot that occurs in a deep (as opposed to superficial) vein, usually in the legs.  See http://www.webmd.com/heart-disease/tc/deep-vein-thrombosis-topic-over view (last visited May 28, 2009).

[4]  Thrombophlebitis is a circulatory problem that develops when a blood clot slows the circulation in a vein, leading to irritation.  See http://www.webmd.com/a-to-z-guides/understanding-thrombophlebitis-basics (last accessed May 28, 2009).

ventricular ejection fraction was 64% and the left ventricular wall motion was normal.  (AR 186).  A chest X-ray taken on June 14, 2001 showed an infiltrate over the left lower lobe and moderate cardiomegaly with changes suggesting hypertension and hilar calcifications.  (AR 183).

On July 10, 2001, Dr. Covington referred Plaintiff to pulmonary specialist Sucha Kim, M.D.  (AR 180).  Dr. Kim diagnosed Plaintiff with purulent sputum, possible bronchitis, and airway inflammation.  (AR 168-71).  On August 30, 2001, Dr. Covington completed a form allowing Plaintiff to receive a disabled identification card from the Los Angeles County Metropolitan Transportation Authority.  (AR 221).  Dr. Covington listed Plaintiff's conditions as morbid obesity, thyroid dysfunction, status post thrombophlebitis, status post DVT and inferior vena cava filter.  (Id.).

In a subsequent undated MPE form, Dr. Covington diagnosed Plaintiff with chronic thrombophlebitis, osteoarthritis, morbid obesity and thyroid dysfunction.  (AR 223).  Dr. Covington listed Plaintiff as temporarily disabled with a projected recovery date of August 2002.  (AR 223).  In an MPE form dated October 17, 2002, Dr. Covington expressed the view that Plaintiff could do light or sedentary work, but only for twenty hours a week.  (AR 222, 272).  An EKG on November 5, 2002 indicated atrial fibrillation[5] and a nonspecific T wave abnormality.  (AR

---

[5]   Atrial fibrillation is the most common type of irregular heartbeat, where many impulses begin simultaneously in the atria.  This leads to a very rapid and disorganized heartbeat.  See http://www.webmd.com/heart-disease/atrial-fibrillation/heart-disease-atrial-fibrillation-basics (last accessed May 28, 2009).

256).   On February 10, 2003, Dr. Covington referred Plaintiff to cardiologist Ruth Strauss, M.D.  (AR 438-42).  Dr. Strauss listed DVT and hypertension for Plaintiff's medical history.  (AR 440). Plaintiff's weight was 425 pounds.  (AR 439).  Dr. Strauss' diagnoses were status post DVT and hypertension.  (AR 439-40).

On January 7, 2004, Avena Flaherty, PA-C, completed a Physical RFC Questionnaire.[6] (AR 293-97).  P.A. Flaherty listed Plaintiff's diagnoses as chronic thrombophlebitis, status post deep thrombosis, status post stent insertion and morbid obesity.  (AR 293).  She noted Plaintiff's limitations as being able to lift and carry ten pounds occasionally, less than ten pounds frequently, could stand and walk for less than two hours in an eight-hour workday and that she could sit for six hours in an eight-hour workday.  (AR 294-97).

On March 3, 2005, Dr. Covington also completed a Physical RFC Questionnaire.  (AR 345-49).  She listed Plaintiff's diagnoses as DVT, hypothyroidism, atrial fibrillation and morbid obesity.  (AR 345).  She noted Plaintiff's limitations as being able to lift and carry ten pounds occasionally, lift and carry less than ten pounds frequently and being able to stand, sit, and walk less than two hours in an eight-hour workday.  (AR 346-49).  On March 9, 2005, Dr. Covington ordered a series of tests.   (AR 375-77).   An abdominal ultrasound showed multiple gallstones and a fatty liver, a lumbar spine X-ray revealed a

_____

[6]  A PA-C is a physician's assistant.  P.A. Flaherty works for the Center 4 Health Medical Group, the same group as Dr. Covington.  (AR 293).

straightened lordotic curve, and a right hip X-ray was negative for fractures. (AR 375-76). Chest X-rays showed cardiomegaly. (AR 376).

On March 23, 2005, Dr. Covington referred Plaintiff to cardiologist Gerald F. Bresnehan, M.D. (AR 421, 423). Dr. Bresnehan assessed that Plaintiff suffered from morbid obesity, palpitations and tachycardia. (AR 428-29). On April 25, 2005, gastroenterologist Stephen Parnell, M.D., examined Plaintiff. (AR 366). Dr. Parnell found that Plaintiff's abdomen was non-tender and diagnosed Plaintiff with asymptomatic cholelithiasis and fatty liver. (Id.). Dr. Covington completed another undated MPE form that listed diagnoses of thyroid dysfunction, status post DVT, status post inferior vena cava filter placement and recurrent thrombophlebitis. (AR 371). Dr. Covington found that Plaintiff could perform light and sedentary work for thirty hours a week. (Id.). She also found that Plaintiff could participate in either a job search or education program of at least thirty hours a week. (Id.).

On November 21, 2007, Plaintiff underwent laboratory testing that indicated that her fasting glucose was within normal limits. (AR 498). On that same date, Dr. Covington referred Plaintiff to the offices of the West Gastroenterology Medical Group. (AR 503). Plaintiff's weight was over 350 pounds. (AR 516). Plaintiff received a diagnosis of iron-deficiency anemia. (Id.).

**2. Consultative Physician**


On May 1, 2002, internist John Sedgh, M.D., examined Plaintiff. (AR 200-204, 271). Dr. Sedge recorded Plaintiff's weight and height at 375 pounds and 69 inches, respectively. (AR 201). Dr. Sedgh noted that Plaintiff was a "42-year-old female who presents with PE, DVT and asthma." (AR 204). Dr. Sedgh found that Plaintiff "can lift and carry without limitations . . . can sit, stand and walk without limitations . . . [s]he does not have any postural limitations or manipulative limitations." (AR 204). On May 20, 2002, the Disability Determination Service ("DDS") concluded that Plaintiff's only limitation was to avoid concentrated exposure to fumes, odors and dusts. (AR 209-15).


**3. Medical Expert**


At the April 9, 2008 hearing, Harvey L. Alpern, M.D., testified regarding Plaintiff's limitations. (AR 611-16). Dr. Alpern has served as the President of the Board of Directors of the American Academy of Disability Evaluating Physicians and is an Assistant Clinical Professor of Medicine at the University of California, Los Angeles. (AR 561, 563). Dr. Alpern received his medical degree from the University of Southern California School of Medicine in 1964 and currently works in private practice specializing in cardiology and internal medicine. (AR 561).


Dr. Alpern reviewed Plaintiff's medical records before testifying. (AR 611-12). Dr. Alpern stated that Plaintiff's DVT was a past condition and that there was no evidence of it having a present effect

8

on Plaintiff.  (AR 612-13).  Dr. Alpern testified that Plaintiff's hypothyroidism was being successfully treated.  (AR 613).  Dr. Alpern interpreted Plaintiff's EKGs as not being indicative of atrial fibrillation.  (<u>Id.</u>).  Dr. Alpern testified that Plaintiff's morbid obesity would limit her to lifting ten pounds frequently and twenty pounds occasionally.  (AR 615).  Dr. Alpern further testified that Plaintiff would be limited to standing and walking for two out of eight hours and sitting for six out of eight hours.  (<u>Id.</u>).  He testified that Plaintiff should also be restricted from heights and dangerous equipment because of her history of syncope.  (<u>Id.</u>).  Dr. Alpern testified that the edema resulting from Plaintiff's morbid obesity is not in itself impairing.  (AR 616).   He testified that it would be reasonable for Plaintiff to elevate her legs during breaks, before and after work. (<u>Id.</u>).

### 4.  Other Medical History

On August 29, 1990, Plaintiff suffered a pulmonary embolism and, as a result, remained at the Harbor-UCLA Medical Center until September 7, 1990.  (AR 105-108).  On March 7, 1999, Plaintiff went to the California Hospital Medical Center after a syncope attack.  (AR 129-34).   The attending physicians reported that Plaintiff had a history of pulmonary embolus, deep vein thrombosis and hypothyroidism.  (AR 129-34).   A pulmonary arteriogram suggested the presence of a thromboembolism.  (AR 119-20).  On March 12, 1999, Plaintiff underwent an inferior vena cava filter placement.  (AR 116).  Attending physician Mushtaq A. Khan, M.D., prescribed Coumadin to Plaintiff, (AR 115), and subsequently discharged her with diagnoses of recurrent pulmonary embolism, status post inferior

vena cava filter placement, obesity, and a history of hypothyroidism, (AR 113).  On July 7, 2001, Plaintiff went to the emergency room of the California Hospital Medical Center because she had developed shortness of breath after walking uphill.  (AR 110-12).  Plaintiff received a diagnosis of pneumonia.  (AR 110).

On October 30, 2003, Plaintiff went to the Centinela Hospital Medical Center after complaining of a cough, fever and a sharp left-sided chest pain.  (AR 305-10).  Tests showed that Plaintiff's lungs were clear, and an EKG was unremarkable.  (AR 305-6).  On May 14, 2004, Plaintiff went to the Centinela Hospital emergency room after having fallen while on a bus.  (AR 298-304).  An X-ray of her lumbosacral spine indicated mild degenerative changes of the lumbar spine.  (AR 304).  The impression in the emergency room report was status post fall and lumbar contusion.  (AR 302).  On May 24, 2007, Plaintiff went to the emergency room at the Memorial Hospital of Gardena because she had experienced a syncope episode.  (AR 530-37).  A CT scan and neurological exam were normal.  (AR 541-42).  A knee X-ray showed that Plaintiff had a bone spur.  (AR 543).  Plaintiff's EKG indicated a normal sinus rhythm and non-specific anterior T wave changes.  (AR 540).

### 5.  Plaintiff's Subjective Pain Testimony

Plaintiff testified at the April 9, 2008 hearing.  (AR 616-22).  Plaintiff stated that she cannot walk without a cane.  (AR 617).  Plaintiff testified that she could only walk one city block because of edema-induced leg pain.  (Id.).  Plaintiff also testified that she

elevates her legs for approximately two hours a day because without elevation she is subject to swelling and throbbing. (AR 617-18).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[7] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

---

[7]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1520, 416.910.

(3)   Does the claimant's impairment meet or equal the
      requirements of any impairment listed at 20 C.F.R. Part
      404, Subpart P, Appendix 1?  If so, the claimant is found
      disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If
      so, the claimant is found not disabled.  If not, proceed
      to step five.

(5)   Is the claimant able to do any other work?  If not, the
      claimant is found disabled.  If so, the claimant is found
      not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§
404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets his burden of
establishing an inability to perform the past work, the Commissioner
must show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's residual functional capacity, age, education and work
experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The
Commissioner may do so by the testimony of a VE or by reference to the
Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart
P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240
F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
(strength-related) and nonexertional limitations, the Grids are

1  inapplicable and the ALJ must take the testimony of a VE.   <u>Moore v.</u>
2  <u>Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

3
4  <center>**THE ALJ'S DECISION**</center>
5
6      At step one, the ALJ found that Plaintiff had not engaged in any
7  substantial gainful activity since March 20, 2002, stating that "the
8  claimant has not worked since March 20, 2002."[8]   (AR 269).

9
10     At step two, the ALJ found that Plaintiff's severe impairments are
11 morbid obesity and a history of DVT.  (AR 269).  The ALJ relied upon the
12 medical records and Dr. Alpern's testimony to find that Plaintiff had
13 severe impairments because of her morbid obesity and her history of DVT.
14 (AR 269, 613).

15
16     At step three, the ALJ found that Plaintiff does not have an
17 impairment or combination of impairments that meets or medically equals
18 the criteria of a listing from Appendix 1, Subpart P, Regulations No. 4.
19 20 CFR 416.920(d), 416.925 and 416.926 (AR 275).  The ALJ noted that
20 obesity was deleted from the listings in October 1999.   (<u>Id.</u>).
21 Furthermore, he found that her history of DVT fails to meet or equal
22 listing 4.11 or listing 4.12.  (<u>Id.</u>).

23
24     At step four, the ALJ found that Plaintiff has the RFC for light
25 work with limitations.  (AR 275).  The ALJ found that Plaintiff could
26
27 _____
28      [8]  The record indicates that Plaintiff has never worked, but did
   volunteer helping to label books at a school.  (AR 602).

<center>13</center>

1  lift and carry ten pounds frequently, but could only occasionally lift
2  and carry twenty pounds.  (<u>Id.</u>).  The ALJ further found that she could
3  stand and walk for up to two hours in an eight-hour workday, but that
4  she must use a cane for walking.  He found no limitations for sitting,
5  but precluded Plaintiff from working around unprotected heights and
6  moving machinery.  (AR 275).  However, the ALJ could not ascertain
7  whether she would be able to perform any past work, in part because it
8  appears that she had not worked for fifteen years prior to the hearing,
9  although the record is inconsistent on this point.  (AR 276).

10

11     At step five, the ALJ found that there are a jobs in the national
12  economy that Plaintiff can perform.  (AR 277).  The ALJ found that
13  Plaintiff was a "younger individual" pursuant to 20 CFR 416.963 because
14  she was forty-two years old when the application was filed.  (<u>Id.</u>).
15  Further, the ALJ concluded that Plaintiff had limited education because
16  she attended high school through twelfth grade.  (<u>Id.</u>); <u>See</u> 20 CFR
17  416.964.  The ALJ found Plaintiff had the ability to communicate in
18  English.  (AR 277).  Transferability is not an issue because Plaintiff
19  has not had a past job.  (<u>Id.</u>); <u>See</u> 20 CFR 416.968.

20

21     The ALJ relied on the testimony of VE Sandra Schneider in reaching
22  his conclusion that Plaintiff was not disabled.  (ALR 277, 622-25).  The
23  ALJ found that Plaintiff could work as an assembler or an order clerk.
24  (AR 623).

25

26

27

28

14

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

**The ALJ Provided Specific And Legitimate Reasons For Giving Less Weight To The Treating Physician's Opinion**

Plaintiff contends that ALJ erred by failing to give appropriate weight to her treating physician's opinion. (Jt. Stip. at 5-7, 10-12).

15

More specifically, Plaintiff argues that the ALJ improperly "split the difference between a treating source and a non-examining source to come up with his residual functional capacity assessment." (Jt. Stip. at 6). Plaintiff states that the ALJ simply selected Dr. Alpern's proposed RFC because it was a compromise between the position of Dr. Covington and the DDS. (Jt. Stip. at 11). Plaintiff asserts that the ALJ did not provide the required justification for according less weight to Dr. Covington's opinion. (Jt. Stip. at 5, 12). This Court disagrees.

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984)). When a treating doctor's opinion is contradicted by another doctor, "the Commissioner may not reject his opinion without providing 'specific and legitimate reasons' supported by substantial evidence." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." Morgan, 169 F.3d at 602. However, a court can reject such an opinion "based *in part* on the testimony of a nontreating, nonexamining medical advisor." Id. (emphasis in original); See also Magallanes v. Bowen, 881 F.2d 747, 751-755 (9th Cir. 1989) (affirming an ALJ's decision awarding less weight to a treating physician based on the testimony of a nonexamining physician that was consistent with evidence

16

in the record).  In addition, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  <u>See</u> <u>Matney</u>, 981 F.2d at 1019; <u>Batson v. Comm'r of Soc. Sec.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ did provide specific and legitimate reasons for giving less weight to Dr. Covington's opinions.  The ALJ's opinion demonstrates that Dr. Covington's opinion was "unsupported by the record as a whole."  <u>Batson</u>, 359 F.3d at 1195.

Dr. Covington opined that Plaintiff could sit, stand, and walk for only two hours of the day.  She also stated that, while Plaintiff could perform light and sedentary work, Plaintiff would be limited to thirty hours per week.  This opinion contrasted with Dr. Covington's earlier report that stated Plaintiff would be limited to twenty hours a week. Dr. Covington's evaluations were inconsistent, listing Plaintiff as temporarily disabled, later as permanently disabled, and subsequently as temporarily disabled.

The ALJ adopted Dr. Alpern's RFC because he found it to be "an apt reflection of the medical evidence in this case."  (AR 276).  The ALJ supported this conclusion by citing several instances in Plaintiff's medical record that indicate many of her conditions do not have an adverse effect on her ability to work.  The ALJ, in evaluating Plaintiff's limitations, took into account her morbid obesity and her past history of DVT.  (AR 276).  However, the ALJ noted that, aside from Plaintiff's morbid obesity, "none of the claimant's other impairments

17

has a significant impact on her functional capacity." (AR 276). Dr. Alpern's testimony fully supported this conclusion.

The ALJ provided examples from the medical evidence that undermined Dr. Covington's conclusions. For instance, the ALJ noted that Plaintiff has been free from blood clots since 1999, which he finds to be a result of the installation of the inferior vena cava filter and the use of prescription drugs to combat the condition. (AR 276). Because Dr. Covington repeatedly lists chronic thrombophlebitis[9] in her MPE forms, the fact that Plaintiff has been clot free since 1999 suggests that Dr. Covington's evaluations are inaccurate.

The ALJ further noted that since Plaintiff started taking blood pressure medicine "the medical records show that her blood pressure has been generally under good control." (AR 276). The ALJ also cites the normal EKG tests as casting doubt on the impairments caused by Plaintiff's alleged palpitations and noted the lack of evidence for ischemia in the record. (AR 276). The medical evidence, therefore, provides specific and legitimate reasons to afford less weight to Dr. Covington's opinion.

The ALJ also relied on Dr. Alpern's testimony, the medical expert, as a legitimate reason for awarding less weight to Dr Covington's opinion. (AR 276). The testimony of a medical expert "may serve as substantial evidence when [it is] supported by other evidence in the

---

[9]   A condition that develops when a blood clot slows the circulation in a vein, leading to irritation. See note 4.

1  record and [is] consistent with it." <u>Andrews v. Shalala</u>, 53 F.3d 1035,
2  1041 (9th Cir. 1995). Dr. Alpern, after reviewing the medical record,
3  found that the only impediment to Plaintiff's functioning was her morbid
4  obesity. (AR 612-14). Dr. Alpern testified that Plaintiff had received
5  treatment for her blood clots and hypothyroidism. (AR 612-613). Dr.
6  Alpern also noted that Plaintiff's edema-induced leg pain would not
7  interfere with her ability to work because any necessary elevation could
8  be done "during breaks, before and after work." (AR 616). Dr. Alpern's
9  testimony, along with the objective indications in the record that
10 certain conditions listed by Dr. Covington were no longer adversely
11 affecting Plaintiff, is another legitimate reason to grant less weight
12 to Plaintiff's treating physician's opinion. The ALJ thus provided
13 specific and legitimate reasons, supported by the record and Dr.
14 Alpern's testimony, for his decision not to give controlling weight to
15 the treating physician's opinion.

16

17      Plaintiff contends that <u>Orn v. Astrue</u>, 495 F.3d 625 (9th Cir.
18 2007), governs this case. Although <u>Orn</u> dealt with an ALJ disregarding
19 a treating physician's opinion, it is distinguishable. In <u>Orn</u>, the
20 ALJ's reasons for rejection were actually contradicted by the record.
21 <u>Orn</u>, 495 F.3d at 634. Here, the ALJ expressly pointed to
22 inconsistencies that existed in the record and in the recorded diagnoses
23 and alleged disabilities of Plaintiff.

24

25      The ALJ relied upon objective medical evidence and the testimony of
26 Dr. Alpern in concluding Plaintiff was not entitled to benefits. The
27 ALJ noted specific parts of the record that indicated discrepancies
28 between the Dr. Covington's opinion and Plaintiff's actual condition.

19

Furthermore, Dr. Alpern provided testimony indicating that Dr. Covington's opinions were inconsistent with the medical record. These were specific and legitimate reasons for awarding less weight to the treating physician's opinion. Accordingly, the ALJ did not err in denying Plaintiff benefits.

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 12, 2009.


                                                    /s/
                                    _____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

---

[10]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."